IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA<br><br>v.<br><br>FREDRICO PACHECO-ROMERO, ET AL. | Criminal Action No.<br><br>1:19-CR-077 |

**Government's Motion to Disqualify Jerome D. Lee and S. Eli Brown-Bennett**

The United States of America, by Byung J. Pak, United States Attorney, Theodore S. Hertzberg, Assistant United States Attorney, and Tyler Mann, Special Assistant United States Attorney, for the Northern District of Georgia, hereby moves to disqualify Jerome D. Lee and S. Eli Brown-Bennett (collectively, "Defense Counsel") as attorneys for defendants Fredrico Pacheco-Romero, Carlos Martinez, Eduardo Lopez, Victor Manuel Sanchez, Jorge Mendoza-Perez, and Santana Cardenas (collectively, "Defendants"). Defense Counsel, who are associated with the same law firm, intend to represent all six Defendants, who have been indicted for conspiring with each other to possess methamphetamine with intent to distribute. The joint representation of Defendants gives rise to an irreconcilable conflict, and this Court's interest in the fair, ethical administration of justice requires that Defense Counsel be disqualified.

## Procedural History

On February 13, 2019, Defendants were charged by criminal complaint with having conspired to possess with intent to distribute at least 500 grams of a mixture and substance containing a detectable amount of methamphetamine. Doc. 1. Based on information obtained through court-authorized wiretaps and other sources, the affidavit attached to the complaint described the roles each defendant held in the conspiracy. Doc. 1-2-21. For example, the affidavit set forth that Defendants Sanchez, Mendoza-Perez, and Cardenas were methamphetamine "cooks," while Defendant Martinez operated as a dispatcher and Defendant Pacheco-Romero served as a supervisor for Defendants' drug trafficking and money laundering organization. *Id.* at 12-14. Additionally, the complaint catalogued the recovery of various items from properties with which Defendants had different connections. For example, approximately 400 kilograms of methamphetamine were found inside a home in which Defendants Sanchez, Mendoza-Perez, and Cardenas were present when agents executed a state search warrant, hundreds of thousands of dollars in cash were seized from Defendant Martinez's and Defendant Pacheco-Romero's residences, multiple firearms were located in Defendant Pacheco-Romero's home, and a money counter was located in Defendant Lopez's residence. *Id.* at 17-21.

The same day that the criminal complaint was filed, Defense Counsel represented Defendants Martinez, Lopez, Sanchez, Mendoza-Perez, and Cardenas at their initial appearance before the Honorable Justin S. Anand.  Docs. 2, 5, 8, 11, 15.  Defense Counsel also responded in writing to the Government's motions to detain four of the defendants, *see* Doc. 17,[1] and the two lawyers represented all of the defendants except Defendant Pacheco-Romero at their combined detention hearings the following week.  Docs. 26, 28, 30, 32, 34; *see also* Doc. 63-1-5 ("MR. BROWN-BENNETT: . . . [O]bviously we represent five individuals.").

On February 15, 2019, Judge Anand appointed Allison Dawson of the Federal Defender Program to represent Defendant Pacheco-Romero for initial appearance only.  Docs. 20, 21.  Defendant Pacheco-Romero moved for and was granted time to retain counsel of his choice.  Doc. 22.  On February 21, 2019, Mr. Brown-Bennett noticed an appearance on Defendant Pacheco-Romero's behalf.  Doc. 38.

On February 26, 2019, a federal grand jury returned a single-count indictment charging that, in violation of 21 U.S.C. § 846, Defendants conspired with each other to possess methamphetamine with intent to distribute.  Doc. 41.  Defense Counsel jointly represented Defendants at arraignment on March 6, 2019.  Docs. 64-69.  Two

---

[1]   The signature block of the motion response bears the name of "Eli Bennett Brown," rather than Eli Brown-Bennett.  Doc. 17-8.

days later, prompted by the continued involvement of Defense Counsel as attorneys for all Defendants jointly and collectively, the Court ordered that an inquiry hearing pursuant to Fed. R. Crim. P. 44 be held on March 14, 2019.

## Argument and Citation of Authority

1. **Defense Counsel's proposal to represent all Defendants beyond arraignment necessitates careful scrutiny and investigation by the Court.**

Fed. R. Crim. P. 44 requires the Court to "promptly inquire about the propriety of joint representation" in criminal cases. Joint representation occurs where, as here, "the defendants are represented by the same counsel, or counsel who are associated in law practice." Fed. R. Crim. P. 44(c)(1)(B). At a Rule 44 hearing, the Court "must personally advise each defendant of the right to the effective assistance of counsel, including separate representation." Fed. R. Crim. P. 44(c)(2). Recognizing that joint representation is likely to give rise to conflicts that threaten the integrity of judicial proceedings, the Court is obligated to take whatever measures are appropriate to safeguard each defendant's right to counsel, "[u]nless there is good cause to believe that no conflict of interest is likely to arise." *Id.*

2. **The Court's interest in ensuring the ethical administration of justice overcomes a defendant's desire to be represented by a lawyer of his choosing.**

Although a "criminal defendant has a presumptive right to counsel of choice," *United States v. Ross*, 33 F.3d 1507, 1522 (11th Cir. 1994), "a defendant's right to the

4

counsel of his choice is not absolute." *United States v. Campbell*, 491 F.3d 1306, 1310 (11th Cir. 2007). The Supreme Court has recognized that "the essential aim of the [Sixth] Amendment is to guarantee an effective advocate for each criminal defendant rather than to ensure that a defendant will inexorably be represented by the lawyer whom he prefers." *Wheat v. United States,* 486 U.S. 153, 159 (1988). Accordingly, while the Court "must recognize a presumption in favor of petitioner's counsel of choice, . . . that presumption may be overcome not only by a demonstration of actual conflict but by a showing of a serious potential for conflict." *Id.* at 164; *see also Ross*, 33 F.3d at 1523 ("[E]ven a potential conflict suffices for disqualification.").

The determination of whether an actual or potential conflict of interest exists is "left primarily to the informed judgment of the trial court." *Wheat*, 486 U.S. at 164. The Supreme Court has recognized the inherent difficulty of this determination that must take place "in the murkier pre-trial context when relationships between parties are seen through a glass, darkly." *Id.* at 162-63. A defense counsel's ability to recognize the risk of a conflict is complicated by the fact that it is "rare" for a defense counsel "to learn the entire truth from his own client, much less be fully apprised before trial of what each of the Government's witnesses will say on the stand." *Id.* A client's waiver of conflict-free representation also may be suspect

because the "imponderables" that may arise in trial "are difficult enough for a lawyer to assess, and even more difficult to convey by way of explanation to a criminal defendant untutored in the niceties of legal ethics." *Id.* at 163.[2]

In light of the difficulty in assessing conflicts, the district court has "substantial latitude in refusing waivers of conflicts of interest not only in those rare cases where an actual conflict may be demonstrated before trial, but in the more common cases where a potential for conflict exists which may or may not burgeon into an actual conflict as the trial progresses." *Id.* And "where a court justifiably finds an actual conflict of interest, there can be no doubt that it may decline a proffer of waiver." *Id.* at 162.

The Court has the authority to decline such waivers because it has a duty to "protect its independent interest in ensuring that the integrity of the judicial system is preserved and that trials are conducted within ethical standards." *Ross*, 33 F.3d at 1523. This independent interest arises in part from the "legitimate wish of district courts that their judgments remain intact on appeal." *Wheat*, 486 U.S. at

---

[2] Defendants are not merely unschooled as to matters of professional conduct; all but two of them are foreign nationals who may lack familiarity with the American system of criminal justice, most have difficulty understanding and speaking the English language, and at least some, if not all, have had limited formal education.

161-62 (citing cases entertaining ineffective assistance claims from defendants who waived the right to conflict-free counsel); *see also Ross*, 33 F.3d at 1523 ("The need for fair, efficient, and orderly administration of justice overcomes the right to counsel of choice where an attorney has an actual conflict of interest . . . .").

### 3. Defense Counsel are laboring under an irreconcilable conflict of interest.

Where, as here, an attorney seeks to represent simultaneously all of the indicted conspirators in the same case, "the potential conflicts of interest [a]re obvious." *United States v. Padilla-Martinez*, 762 F.2d 942, 946 (11th Cir. 1985). As the Supreme Court recognized more than 40 years ago, joint representation is inherently "suspect" because it tends to affect the ability of counsel to undertake certain tasks that could benefit one client at the expense of another:

> [I]n this case it may well have precluded defense counsel for [one defendant] from exploring possible plea negotiations and the possibility of an agreement to testify for the prosecution, provided a lesser charge or a favorable sentencing recommendation would be acceptable. Generally speaking, a conflict may also prevent an attorney from challenging the admission of evidence prejudicial to one client but perhaps favorable to another, or from arguing at the sentencing hearing the relative involvement and culpability of his clients in order to minimize the culpability of one by emphasizing that of another. Examples can be readily multiplied.

*Holloway v. Arkansas*, 435 U.S. 470, 489-90 (1978).

The same peril is present here. Although all Defendants have been charged identically,[3] they are not similarly situated, and their interests cannot be presumed to be entirely aligned. As set forth in the criminal complaint, certain of the Defendants bear more criminal responsibility than others, and the sentencing enhancements that could affect one defendant may not apply to the others. Additionally, the Defendants each have different criminal histories. In such circumstances, the Eleventh Circuit has acknowledged that disqualification is appropriate. *See Padilla-Martinez*, 762 F.2d at 948 (observing that district court "was unable to find good cause to believe that no conflict of interest would be likely to arise" where prosecutor planned to make plea offer to defendants who agreed testify against other defendants, one of the defendants was an officer of the ship from which a large quantity of drugs was seized but the majority were only crew members, and some but not all of the defendants had prior arrest records).

**4. Once relieved from representing Defendants collectively, Defense Counsel must be disqualified from representing any of the Defendants individually.**

As the Eleventh Circuit has held, disqualification is required when an attorney previously represented a witness related to the same alleged criminal conduct.

---

[3] As stated at arraignment, the Government anticipates that the grand jury will return a superseding indictment that will supplement but not replace the existing conspiracy charge.

*See, e.g.*, *United States v. Henry*, 307 F. App'x 331, 334-35 (11th Cir. 2009) ("When a witness at trial was defended by an attorney representing the defendant against charges related to an identical crime, the attorney has an 'actual' conflict of interest"); *United States v. McCutcheon*, 86 F.3d 187, 189 (11th Cir. 1996) (holding that "there can be no doubt" that defense counsel's prior representation of a co-defendant in a crack cocaine case "created an ethical conflict that would disqualify him" when one co-defendant considered testifying against the other co-defendant);[4] *United States v. Culp*, 934 F. Supp. 394, 398 (M.D. Fla. 1996) (recognizing ethical "conundrum" requiring disqualification that is "posed most starkly where, as here, the lawyer's former client will testify against his current client as a witness for the Government").

---

[4] The Georgia Rules of Professional Conduct, which apply to attorneys practicing in this Court, *see* LCrR 83.1C, NDGa, recognize that an unwaivable conflict exists if the representation "[i]ncludes the assertion of a claim by one client against another client represented by the lawyer in the same or substantially related proceeding or [] involves circumstances rendering it reasonably unlikely that the lawyer will be able to provide adequate representation to one or more of the affected clients." Ga. R. Prof'l Conduct 1.7(c)(2)-(3). The prior representation of a government witness in a substantially related matter creates "at least a serious potential for a conflict of interest, which ethically bar[s] defense counsel from representing [defendant] at the trial." *Edwards v. State*, 784 S.E.2d 924, 929 (Ga. Ct. App. 2016) (affirming disqualification of defense counsel, citing Rule 1.7); *see also United States v. Scott*, No. 2:05-CR-01-WCO, 2007 WL 2121644, at *2-3 (N.D. Ga. July 24, 2007) (finding an unwaivable conflict under Rule 1.7(c)(3) based on counsel's prior representation of government witness).

The Eleventh Circuit's opinion in *Campbell* underscores the concern that would be presented if Defense Counsel were to remain involved in this case. In *Campbell*, the defendant sought to retain an additional attorney whose law firm previously represented a witness on corruption charges related to the pending charges against the defendant. 491 F.3d at 1309. Quoting *Ross*, the Eleventh Circuit noted that defense counsel faced an impossible dilemma: the prior representation either "*could* cause the defense attorney improperly to use privileged communications in cross-examination" or it "*could* deter the defense attorney from intense probing of the witness on cross-examination to protect privileged communications with the former client." *Id.* at 1311 (quoting *Ross*, 33 F.3d at 1523) (emphasis in original). The Eleventh Circuit held "without doubt" that the attorney who represented the witness "would have had an actual conflict of interest that would warrant disqualification," and imputed the conflict to the defense counsel. 491 F.3d at 1311.

Once disqualified from joint representation, Defense Counsel cannot defend any individual defendant against *the exact same allegations* that were at issue in their prior representation of the other five co-defendants. *See Ross*, 33 F.3d at 1523 (affirming disqualification for conflict from prior representation of participant in drug conspiracy tied to charged conduct). The necessity of disqualification here is even stronger than in cases in which defense counsel was disqualified based on a

prior representation of a witness in a merely related matter. *See, e.g.*, *McCutcheon*, 86 F.3d at 188 (affirming disqualification of counsel who previously represented witness in separate crack cocaine case); *United States v. Kight*, No. 1:16-CR-99-WSD, 2017 WL 4619024, at *13 (N.D. Ga. Oct. 16, 2017) (disqualifying counsel based on prior representation of government witness in related civil action).

## Conclusion

For the foregoing reasons, the United States respectfully requests that the Court disqualify Jerome D. Lee and S. Eli Brown-Bennett as counsel for Defendants.

Respectfully submitted,

BYUNG J. PAK
*United States Attorney*

/s/ THEODORE S. HERTZBERG
*Assistant United States Attorney*
Georgia Bar No. 718163
Theodore.Hertzberg@usdoj.gov

/s/ TYLER MANN
*Special Assistant United States Attorney*
Georgia Bar No. 320397
Tyler.Mann@usdoj.gov

11

**Certificate of Service**

The United States Attorney's Office served this document today by filing it using the Court's CM/ECF system, which automatically notifies the parties and counsel of record.

March 12, 2019

/s/ THEODORE S. HERTZBERG

THEODORE S. HERTZBERG

*Assistant United States Attorney*